**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

ROBERT D. BRUNS,

    Plaintiff,                              CIVIL ACTION NO.: 2:15-cv-23

    v.

CAROLYN W. COLVIN, Acting
Commissioner,

    Defendant.

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Christine Long ("the ALJ" or "ALJ Long") denying his claim for a period of disability and disability insurance benefits. Plaintiff urges the Court to reverse the ALJ's decision and remand for an award of benefits or, in the alternative, remand for a new hearing. Defendant asserts that the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision.

## BACKGROUND

Plaintiff protectively filed an application for disability benefits on March 30, 2012, alleging disability beginning on October 15, 2009, due to "multiple medically determinable impairments." (Doc. 1, p. 2.) After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On August 6, 2013, ALJ Long conducted a hearing in Orange, California, at which Plaintiff, who was represented by counsel, appeared and testified. (Doc. 19-2, p. 14.) Alan Boroskin, a vocational expert, also appeared at the hearing. (Id.) ALJ Long found that Plaintiff was not disabled within the meaning of the Social Security Act, 42

U.S.C. §§ 301, *et seq.* ("the Act"). 42 U.S.C. §§ 423 & 416(i). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Doc. 1, p. 2; Doc. 19-2, p. 7.)

Plaintiff, born on October 14, 1955, was fifty-eight (58) years old when ALJ Long issued her final decision. He has a Bachelor's degree in Geology and a Master's degree in Finance. (Doc. 19-2, pp. 22, 39; Doc. 24, p. 3.) Plaintiff's past relevant work experience includes employment as a financial advisor and home care provider. (Doc. 24, p. 3; Doc. 27, p. 2.)

**DISCUSSION**

**I.     The ALJ's Findings**

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments under the "severity regulation." 20 C.F.R. §§ 404.1520(c) & 416.920(c); Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is considered severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations ("the Regulations") and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.

2

Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step. At step four, a determination is made as to whether the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of October 15, 2009, through his last insured date of September 30, 2010. (Doc. 19-2, p. 16.) At Step Two, the ALJ determined that Plaintiff has a history of folliculitis infection, degenerative disc disease of cervical, thoracic, and lumbar spine, and a ventral hernia—conditions considered "severe" under the "severity regulation," 20 C.F.R. 404.1520(c). However, Plaintiff's medically determinable mental impairment of depression was considered non-severe. (Id.) The ALJ also determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment under the Regulations. (Id. at pp. 16, 18.) ALJ Long found that Plaintiff had the RFC, through the date last insured, to perform light work, except with some exertional limitations on the amount that Plaintiff can carry, sit, stand, stoop, kneel, crouch, and crawl.

3

Additionally, the ALJ limited Plaintiff from working in patient care activity in the healthcare industry. (Id. at p. 18.) At the next step, ALJ Long noted Plaintiff was able to perform his past relevant work as a financial advisor as it is actually and generally performed. (Id. at p. 23.)

## II. Issues Presented

Plaintiff contends that the ALJ failed to apply the proper legal standards in analyzing medical opinion evidence from various treating physicians. (Doc. 24, pp. 13–19.) Plaintiff also contends that substantial evidence does not support the ALJ's residual functional capacity finding, including the credibility finding. (Id. at pp. 19–21.) Finally, Plaintiff alleges that the Appeals Council improperly denied his claim by disregarding the new evidence submitted. (Id. at p. 22.)

## III. Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a

scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## IV. Whether the ALJ Applied the Proper Legal Standards in Analyzing Medical Opinion Evidence

Plaintiff asserts that the ALJ failed to apply the correct legal standard when analyzing the medical opinions of his treating physicians. Specifically, Plaintiff alleges that the ALJ "essentially makes her own standard" and ignores the "Treating Physician Rule" when evaluating the opinions of Drs. Ronald Schilling, Glenn Marshak, William Buster, and George Hayter. (Doc. 24, pp. 13–14.) Plaintiff argues that ALJ Long's reasoning, that the credibility of physicians retained in the context of workers' compensation cases "must be carefully assessed," is "contrary to all of Social Security's regulations, rulings, and the Eleventh Circuit's case law." (Id. at pp. 14–15.) Instead, Plaintiff argues that because Drs. Schilling, Marshak, Buster, and Hayter were the treating physicians, their opinions "are most probative." (Id. at p. 15.) Plaintiff also argues that the ALJ should not have accorded less weight to Dr. Schillings' and Dr. Marshak's opinions simply because they misdiagnosed Plaintiff with a left inguinal hernia. Additionally, Plaintiff contends Dr. Buster's opinions regarding Plaintiff's limitations should not be disregarded because it is consistent with Dr. Schillings'. (Id. at p. 16.)

Similarly, Plaintiff argues that the ALJ should also have applied the "Treating Physician Rule" to his treating psychiatrist, Dr. Hayter. (Id. at p. 17.) Plaintiff contends that the ALJ improperly disregarded Dr. Hayter's opinion, and that of examining psychologist, Dr. Parvin Salkeld, regarding Plaintiff's severe mental impairment. (Id.) Plaintiff states that the ALJ

5

improperly gave weight to one-time examiner, Dr. Charlene Krieg. (Id.) Additionally, Plaintiff contends the ALJ did not consider Plaintiff's low Global Assessment Functioning scores.

Defendant responds that the ALJ properly weighed the medical opinions, including those of the treating physicians, in light of the other evidence presented. Under this standard, the treating physician's opinion is entitled to controlling weight only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the individual's case record." (Doc. 27, p. 4 (internal cites omitted).) Defendant avers that the ALJ properly explained that such support was not present in the medical evidence for Drs. Schilling's, Marshak's, Buster's and Hayter's opinions, and as such, there was good cause to weigh their opinions more lightly. Specifically, Defendant points to the ALJ's observations that the abovementioned doctors misdiagnosed Plaintiff's hernia, never properly cultured Plaintiff for a MRSA infection, and that the "radiculopathy" diagnosed by Dr. Schilling cited to the wrong diagnostic exam. (Id. at pp. 5–7.) As for Dr. Hayter, Defendant points to the ALJ's explanation that the medical records from Dr. Hayter's clinical findings of Plaintiff's depressed mood were "very inadequate, as the progress notes did not contain mental status examinations or clear statements of diagnoses since approximately 2000 through the alleged disability onset date." (Id. at pp. 8–9.)

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "The law of this circuit is clear

that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).

"Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Winschel, 631 F.3d at 1179 (quoting Phillips, 357 F.3d at 1241). "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks." Zanders v. Colvin, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013). "For instance, when discounting a medical opinion, he should consider several factors, including the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record." Id. (citing 20 C.F.R. §§ 404.1527(c) & 416.927(c)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179 (citation omitted). Failure to "clearly articulate the reasons for giving less weight to the opinion of a treating physician" is "reversible error." Lewis, 125 F.3d at 1440 (citation omitted).

In making her determination as to how much weight to give Drs. Schilling, Marshak, Buster, and Hayter, ALJ Long explained that she considered the medical evidence of record and the good cause she had to reduce the weight of those opinions. (Doc. 19-2, pp. 17, 20.) As a preliminary matter, the ALJ examined the relationship the above-named physicians had with Plaintiff. She noted that many of the physicians were retained for Plaintiff's workers' compensation case and had prepared medical records "in the context of the adversarial [workers' compensation] system . . . and as such, the credibility and relevance of the opinions of these

physicians must be carefully assessed[.]" (Id. at p. 20.)  Additionally, the ALJ explained that "the definition of disability in a WC case is not the same as a Social disability case … [and] whether the claimant is 'disabled' is a determination reserved to the Commissioner" and not the workers' compensation physicians. (Id.)

Under this framework, ALJ Long observed that Dr. Schilling, although a treating physician, described overly restrictive limitations that were unsupported by the objective medical evidence. (Id.) The ALJ noted that Dr. Schilling declared Plaintiff temporarily totally disabled and sent him for consultations with various other workers' compensation doctors, including Dr. Marshak. (Id. at p. 19.) However, these limitations were unsupported by medical opinions from the Agreed Medical Evaluator ("AME") and Qualified Medical Examiners ("QME"). The ALJ found these opinions to be more credible because "they are supported by the objective evidence and they are consistent with the record as a whole. . . . [T]he opinions of AME physicians are considered more reliable because they are unbiased. This is especially true with inaccurate diagnoses being made by the workers compensation treating doctors." (Id. at p. 20 (internal citations omitted).)

For example, the ALJ noted that Dr. Schilling repeatedly diagnosed Plaintiff with a left inguinal hernia, which the claimant never had. (Id.) Dr. Schilling also stated that "nerve conduction velocity of lower extremities" revealed that Plaintiff had radiculopathy. (Id. at p. 21.) However, another physician, Dr. Barry Braiker, noted that not only were there no reports in the records of nerve conduction velocity findings, but diagnosing "radiculopathy" requires an electrodiagnostic study, and not nerve conduction velocity findings. (Id.) And although Dr. Braiker found some reduction in range of motion, there was no evidence of radiculopathy. (Id. at p. 23.) Dr. Schilling also repeatedly mentioned an MRSA infection, but Dr. Ajit Arora, the

AME, noted that both Dr. Schilling and Dr. Marshak had never confirmed the infection with proper culturing. (Id. at p. 21.) Dr. Braiker echoed this finding in his opinion, noting that there was "no documentation in the records that the claimant had a culture that had actually grown out MRSA." (Id.)

Similarly, ALJ Long also explained that she found Dr. Marshak to be unreliable because Dr. Marshak never tested Plaintiff's alleged MRSA infection with proper culturing, even though he was specifically retained in that capacity. (Id. at pp. 19–20.) However, Dr. Marshak still diagnosed Plaintiff with an MRSA skin infection as well as a left inguinal hernia that Plaintiff never had. (Id. at pp. 20–21.)

With Dr. Buster, although he was Plaintiff's treating physician even before the workers' compensation claim, the ALJ also assigned less weight to his opinion regarding Plaintiff's functional capacities. (Id. at p. 20.) The ALJ explained that Dr. Buster's opinion regarding Plaintiff's functional capacities was inconsistent with the substantial medical evidence from Dr. Arora, and QMEs, Dr. Jon Kelly and Dr. Braiker. (Id.)

The ALJ also gave less weight to Dr. Hayter's opinion as to Plaintiff's limited functional capacity. She noted that Dr. Hayter had inadequate progress notes, no "clear statements of diagnoses," and "no mental status examination findings or any other indication of objective findings to support [a diagnosis of depression.]" (Id. at p. 17.) Additionally, Dr. Hayter gave no explanation as to why he was treating Plaintiff's depression with Adderall. In light of Dr. Hayter's inadequate treatment notes, lack of clear diagnoses, and unexplained prescriptions, the ALJ weighed Dr. Krieg's psychological evaluation more heavily. (Id.) After conducting a mental status exam and psychological evaluation, Dr. Krieg diagnosed Plaintiff with depressive

disorder, but noted that he did not evidence any disorder on mental status. (Id.) She opined that she did not find any mental impairment related functional limitation. (Id.)

The ALJ carefully considered the opinions of the treating physicians, but before assigning them more weight, she also looked to the objective medical evidence of record. After looking at the other medical evidence, the ALJ found that the opinions of Drs. Schilling, Marshak, Buster, and Hayter were unsupported. As such, ALJ Long had good cause to weigh the opinions of the treating physicians more lightly, and this enumeration of error is without merit.

**V.    Whether the ALJ's RFC Finding is Erroneous**

Plaintiff asserts that the RFC assessment is erroneous because ALJ Long did not include functional limitations from Plaintiff's mental impairments and improperly evaluated Plaintiff's credibility about his subjective complaints. (Doc. 24, p. 19.) Plaintiff argues that the ALJ should have assessed all of Plaintiff's severe and non-severe impairments. (Id.) Instead, Plaintiff maintains, the ALJ failed to account for any of Plaintiff's non-severe mental impairments: decreased ability to concentrate, limitations in ability to work around others, need for low stress work, or being off-task due to psychological symptoms. (Id. at p. 20.) Plaintiff also contends that the ALJ did not include any limitations for Plaintiff's left elbow injury or visual impairments. Finally, Plaintiff contends that the ALJ failed to properly assess his subjective allegations by misapplying the standard used to evaluate credibility.

Defendant responds that the ALJ properly evaluated the medical evidence and "determined that Plaintiff's mental impairments did not result in appreciable limitations on his ability to function in a workplace." (Doc. 27, p. 11.) Defendant avers that the ALJ appropriately assessed Plaintiff's mental limitations according to the psychiatric review technique. (Id.) After

conducting the psychiatric review, the ALJ determined that Plaintiff had no restrictions in daily activities, "no limitation in social functioning . . . concentration, persistence, or pace, and no episodes of decompensation." (Id.) Therefore, Defendant argues, there was no need for the ALJ to account for the mental impairments in the RFC findings. Furthermore, the ALJ explained that she gave greater weight to the opinion of Dr. Krieg in coming to this determination because the substantial medical evidence supported her findings. Finally, Defendant avers that the ALJ applied the correct standard before determining that the objective evidence did not support Plaintiff's claims regarding the severity of his symptoms. (Id. at p. 13.)

### A. The ALJ's Credibility Determination

In order to establish disability based on testimony of pain and other symptoms, a social security disability benefits claimant must show: (1) evidence of the underlying medical condition; and (2) either (a) objective medical evidence confirming severity of the alleged pain, or (b) that the objectively determined medical condition could reasonably be expected to give rise to the claimed pain. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). If a plaintiff "testifies as to [her] subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer, 395 F.3d at 1210 (quoting Foote v. Chater, 67 F.3d 1553, 1561–62 (11th Cir. 1995)). "Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court." Id. (internal citation omitted). An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" Id. at 1210–11 (quoting Foote, 67 F.3d at 1561).

ALJ Long found Plaintiff's testimony was not fully credible concerning the severity of his symptoms and the extent of his limitations because the record did not support his claims. (Doc. 19-2, p. 21.) One factor the ALJ referenced was Plaintiff's treatment history. Although the medical record reflected the fact that Plaintiff did receive treatment for his complaints of mental and physical impairments, the record also revealed that treatment was generally successful in controlling the symptoms when Plaintiff followed the prescribed regimen. (Id. at p. 22.) In particular, the ALJ noted that Plaintiff saw a psychiatrist "for many years, but has not sought additional psychiatric care since his psychiatrist retired." (Id.) The ALJ felt this was indicative that Plaintiff's symptoms were not as severe as he claimed. (Id.)

Additionally, the ALJ factored in Plaintiff's inconsistency throughout the objective record when describing "matters relevant to the issue of disability." (Id.) For example, Plaintiff claimed issues with memory, attention, and concentration that he attributed to depression and anxiety, but tests conducted by Dr. Krieg revealed "intact memory, attention/concentration in the low-average range," and "no mental impairment that would limit his ability to engage in work activities and complete a normal workday or workweek." (Id.) Furthermore, both Drs. Kelly and Braiker contradicted Plaintiff's claims regarding debilitating pain. The ALJ observed that the doctors found "no physical reason why the claimant could not work in his usual and customary capacity" and "some reduction in range of motion, but no evidence of radiculopathy." (Id. at pp. 22–23.) The ALJ also noted that Plaintiff was "very vague about the status of his Worker's Compensation Claim" and that he did not know the status "because he has not responded to some paperwork." (Id.)

Finally, ALJ Long took into account Plaintiff's extensive education and prior work history in high level positions in the financial industry. ALJ Long observed that Plaintiff is

claiming "significant long standing mental problems." (Id.) However, the ALJ found that Plaintiff's medical record revealed that the mental impairments "were present at approximately the same level of severity prior to the alleged onset date." (Id.) Thus, Plaintiff's history of working even while inflicted with his mental impairments, "strongly suggests that it would not currently prevent work." (Id.)

It is evident that the ALJ did not find Plaintiff's allegations regarding the extent of his symptoms to be credible, particularly because the substantial evidence on record contradicted Plaintiff's accounts. ALJ Long met the legal requirements when making her credibility findings and explicitly described why she came to her conclusion. Plaintiff offers no valid reason why this Court should reject those findings.

### B. The ALJ's RFC Finding

An RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p. "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007). The final determination of a plaintiff's RFC is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d) & (e)(2).

ALJ Long stated that she considered all symptoms and the extent those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence before determining Plaintiff's RFC. ALJ Long found that the substantial evidence revealed Plaintiff had the RFC to perform light work with exceptions in how much he can carry, sit, stand, and "no more than frequent stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; and cannot work doing patient care activity in the healthcare industry."

13

(Doc. 19-2, p. 18.) ALJ Long did not make accommodations for Plaintiff's left elbow injury because she found his claims regarding the severity and persistence of that injury to be less than credible and unsupported by the substantial medical evidence. (Id. at p. 19.)

In coming to this conclusion, ALJ Long looked to the various treatments Plaintiff received for his alleged injuries. In February of 2010, Dr. K. Rad Payman conducted an orthopedic surgery evaluation of Plaintiff and despite diagnosing certain injuries on Plaintiff's left elbow, determined that "no surgical intervention was needed and recommended continued conservative care." (Id.) In January and April of 2011, Dr. Robert Zlotow performed internal medicine evaluations of Plaintiff and found that Plaintiff's physical examination findings were within normal limits and "that the [Plaintiff] had no work restrictions." (Id. at pp. 19–20.)

The ALJ also took into account the orthopedic evaluations that Drs. Kelly and Braiker respectively performed on Plaintiff in 2011 and 2012. Dr. Kelly found "no physical reason why [Plaintiff] could not work in his usual and customary capacity." (Id. at p. 21.) Dr. Braiker specifically noted with regards to Plaintiff's elbow injury, "any strain or contusion sustained in the injury of October 2009 would be expected to have resolved over a six to twelve week period[.]" (Id.) The ALJ found these opinions to be highly credible because they were consistent with the record as a whole.

As to Plaintiff's mental impairments, ALJ Long followed the psychiatric review technique as set out by 20 C.F.R. § 404.1520a-(a). She considered the impact of Plaintiff's mental impairments on activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, each of extended duration. (Id. at p. 16.) In making these evaluations, ALJ Long stated that she relied more on the opinions from Dr. Krieg instead of Drs. Hayter and Salkeld.

Dr. Hayter indicated that Plaintiff suffered from major depression, panic disorder, borderline personality disorder, and panic without agoraphobia. (Id.) He also reported clinical findings of depressed mood, chronic anxiety, anhedonia, sexual and occupational dysfunction, daily anxiety attacks, and dissociative spells under pressure. (Id. at pp. 16–17.) However, as explained in the previous section, ALJ Long found these conclusions to be unreliable as Dr. Hayter had very inadequate progress notes, no mental status examinations, and no clear statements of diagnoses from 2000 through the alleged disability onset date. (Id. at p. 17.) The ALJ observed that Dr. Hayter's notes are largely "descriptions of [Plaintiff's] business ventures, employment search, lawsuits, and copies of the psychotropic medications prescribed for [Plaintiff]." (Id.) Additionally, Dr. Hayter gave no indication as to why he was treating Plaintiff's depression with Adderall. (Id.)

Dr. Salkeld performed a Worker's Compensation evaluation of Plaintiff in April 2010 and diagnosed moderate major depressive disorder, single episode, generalized anxiety disorder, and attention deficit disorder by history. (Id.) He also found Plaintiff to be "temporarily totally disabled from a psychiatric standpoint." (Id.) The ALJ also found Dr. Salkeld's opinion less credible because it was unsupported by the objective evidence of record.

After conducting a mental status exam and psychological test, Dr. Krieg diagnosed Plaintiff with depressive disorder. (Id.) However, she noted that Plaintiff "did not have any mental impairment that would limit his ability to engage in work activities and complete a normal workday or workweek." (Id.) He was able to perform and sustain performance on "detailed/complex work tasks; . . . accept instructions from supervisors and interact with coworkers and the public; . . . deal with the usual stress that may be encountered in competitive work and adjust to changes." (Id.) Dr. Krieg concluded that Plaintiff had no "mental

15

impairment related functional limitation." (Id.)  The ALJ found Dr. Krieg's opinion to be supported by the substantial evidence.  She determined that Plaintiff "is able to deal with complex tasks and his mental impairment has been essentially non-severe." (Id.)  The ALJ also noted that although Dr. Krieg's evaluation was completed two years after the date last insured, there was no evidence of a significant change in Plaintiff's medical condition. (Id.)

Substantial evidence supports the ALJ's determination that Plaintiff maintained the RFC to perform light work with some limitations on lifting, sitting, standing, stooping, kneeling, crouching, crawling, and climbing.  ALJ Long looked at the objective medical and other evidence of record, as well as Plaintiff's subjective allegations.  She clearly explained why certain sources, including Plaintiff's testimony, received less or more weight.  The ALJ did all that was required of her, and, particularly given the standard of review at this stage, this enumeration of error is without merit.

## VI. Whether Appeals Council Properly Considered New Evidence

Plaintiff argues that the Appeals Council improperly disregarded additional evidence from Dr. Buster when it denied his request for review of the ALJ's decision.  Plaintiff states that the Appeals Council acted improperly because "[t]here is absolutely no discussion or explanation as to why Dr. Buster's additional treating physician opinion does not support a decision contrary to the ALJ's." (Doc. 24, p. 22.)

Defendant responds that the "one-page 'to whom it may concern' letter" from Dr. Buster is "not sufficient to outweigh the substantial evidence that supported the ALJ's finding." (Doc. 27, p. 16.)  Furthermore, Defendant states that there is nothing in the letter that is consistent with the other substantial evidence of record demonstrating the RFC finding from the

ALJ. (Id. at p. 17.) Finally, Defendant argues that the Appeals Council does not need to expand on their analysis of the new evidence. (Id.)

The Appeals Council must consider new, material, and chronologically relevant evidence. See Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1261–62 (11th Cir. 2007); 20 C.F.R. §§ 404.970(b) & 416.1470(b). Material evidence is evidence that is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987). When a plaintiff submits additional evidence to the Appeals Council, the Court must determine whether substantial evidence on the record as whole, including additional evidence submitted to the Appeals Council, supports the ALJ's decision and whether the Appeals Council properly denied Plaintiff's request for review because the ALJ's decision was not contrary to the weight of evidence. See 20 C.F.R. §§ 404.970(b) & 416.1470(b); Ingram, 496 F.3d at 1257, 1261–62, 1266–67 (citing Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998), cert. denied, 525 U.S. 1124 (1999)).

In its review, the Appeals Council stated that it considered the additional evidence, a medical source statement from Dr. Buster. (Doc. 19-2, pp. 7–9.) The Appeals Council then found that Plaintiff's submission of the additional evidence did not provide a basis for changing the ALJ's decision. (Doc. 11-2, p. 7.) Though the Appeals Council did not extensively discuss the impact of this additional evidence on its analysis, the Eleventh Circuit recently held that brief articulations such as this one are proper. See Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780 (11th Cir. 2014) (Appeals Council not required to provide a discussion of claimant's new evidence in denying request for review of ALJ's decision where Appeals Council considered evidence and determined it did not establish error in ALJ's decision); Recala v. Soc. Sec. Admin., Comm'r, 594 F. App'x 592, 593 (11th Cir. 2015) (relying on Mitchell).

Even when considering the additional evidence, substantial evidence on the record as a whole supports the ALJ's decision, and, as the Appeals Council noted, the ALJ's decision is not contrary to the weight of the evidence. The letter submitted by Dr. Buster simply echoed his opinion already within the record. (Doc. 19-29, p. 5.) He reiterated the limitations he believed Plaintiff had, but did not address the ALJ's supportability concerns by providing any additional objective evidence. (Id.) Additionally, Dr. Buster's functional limitation analysis was inconsistent with the substantial evidence. Because ample medical evidence on record indicates that Plaintiff can perform light work, the Appeals Council did not abuse its discretion by according little weight to additional evidence provided by Dr. Buster's letter. Accordingly, the Appeals Council properly denied Plaintiff's request for review because the ALJ's decision was not contrary to the weight of the evidence.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set

out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 12th day of October, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA